## Fitch Estate

*Paul E. Clouser,* of *Caldwell, Clouser & Kearns,* for exceptant.

*Richard Snelbaker,* of *Snelbaker, McCaleb & Elicker,* contra.

SHUGHART, *P.J.,* January 23, 1978 — Katherine L. Fitch died on November 2, 1975. Letters testamentary were granted by the Register of Wills of Cumberland County to Fulton Bank and Richard Basehore, co-executors. The first and final account and statement of proposed distribution were filed on October 22, 1976.

In the account, $11,562 was claimed for executors' commissions which was 6.14 percent of the probate assets. Of this amount, Fulton Bank claimed $6,890 or 3.663 percent and $4,672 or 2.484 percent was allocated to Basehore. Basehore, the co-executor and his wife as creditors-distributees, filed exceptions to the account on the ground that the amount of the commissions was excessive and further on the ground that the two executors

should share equally in the commission.

An auditor was appointed to pass upon exceptions and render a recommendation. When the auditor's report was filed, the bank filed exceptions to certain findings of fact and conclusions of law set forth in the report. The parties waived a further hearing before the auditor and the matter came before this court on the exceptions.

At the audit, the parties agreed that a reasonable commission would be five percent of the income accrued during administration. This resulted in a total commission on principal of $9,405.01 and on income of $488.72.

At the audit, the bank agreed to reduce its claim relative to principal to two-thirds of the total agreed five percent commission, $6,270, leaving Basehore the remaining one-third, $3,135. The auditor concluded that the commission be divided equally between the co-executors as to both principal and income. The exceptions filed by the bank relate to this conclusion.

The settled rule in Pennsylvania, now codified in section 711(12) of the Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508, as amended, 20 Pa.C.S.A. §711(12), is that the orphans' court may allocate the total reasonable fiduciary compensation between co-executors upon the basis of the relative extent of the duties performed: Mowery Estate, 20 Fiduc. Rep. 370, 62 Lanc. 83 (1969). In making such an allocation, however, the court must first consider the presumption, first enunciated in Shaw v. Betts, 2 Sadler 452 (1886), that in the absence of an express agreement to the contrary, each co-executor will receive an equal share of the gross commissions unless the co-executor claiming greater than an

equal share sustains its burden of proving its entitlement to the greater share: Lansinger Estate, 26 Fiduc. Rep. 554 (O.C. Phila., 1976); Weller v. Bell, 36 Luz. 225 (1940).

No understanding was ever reached between the bank and Basehore on the allocation of the fiduciary commission; therefore, the presumption must control unless the bank sustains its burden of proof. The auditor found that it had not, and after careful review of the record, we agree. The facts of this case indicate that both the bank and Basehore carried out their responsibilities by expending considerable amounts of time and effort in managing the estate assets. Therefore, both are presumed entitled to an equal share of the commission. Although the bank may feel that its efforts are worth more than the compensation allocated, it has no right to take part of the fee earned by Basehore. By failing to reach an agreement with Basehore to the contrary, it, in effect, consented to an equal division of the commission.

The bank has forthrightly admitted that it was not required to do anything extraordinary in the administration of the estate. There was not a large number of assets, creditors or legatees. There was no particular problem in collecting assets or locating legatees, and there were no disputed claims of creditors requiring adjustment. Therefore, we affirm the action of the auditor in dividing the commission equally between the parties.

Exceptions were also filed by the bank to the finding imposing costs of the auditor upon it. Although the costs of audit are usually deducted from the fund for distribution, it is not a rigid rule. If the contest before the auditor was rendered necessary solely for the benefit of the executor, and his claim is unsuccessful, the orphans' court division in its

discretion may impose all or a portion of the costs upon him: Grollman's Estate (no. 2), 273 Pa. 565, 117 Atl. 351 (1922).

The bank, while accepting this rule, points out that in several cases where the costs of the audit have been placed upon the fiduciary, there has been an element of gross negligence on the part of the fiduciary. Further, it reasons, because there is no hint of such misconduct on its part here, costs may not be imposed on it. This argument must be rejected. Although gross negligence by the executor is clearly sufficient to justify imposition of the costs of an audit upon him, there is no limitation to that circumstance. Costs may be imposed upon an executor who, as here, makes a fee claim in excess of the accepted figure of five percent of the estate and without any agreement allocating the commission, attempts to take two-thirds of that excessive fee.

For example, in Hake's Estate, 10 York 107 (1896), the account, as filed, claimed a commission that was held to be excessive. As this charge formed the only basis for the audit, costs were imposed on the executors. In Martin's Appeal, 23 Pa. 433 (1854), the contest on behalf of the executor was for the advancement of his own interest, which was to charge the estate for the full amount of his claim. He failed, and the court held that it was just that he should pay the costs of audit.

Thus, although this is not as compelling a case as one where there may be actual fraud on the estate, imposition of costs on the bank is justified because the audit was made necessary because its claims for services were found to be excessive and because of the improper division. It would be unfair to impose the burden of correcting an excessive claim of

510

an executor on the estate. Consequently, the exceptions must be dismissed.

## ORDER

And now, January 23, 1978, for the reasons stated in the opinion filed this date, the exceptions to the auditor's report are dismissed and the report is confirmed.